## LILLARD et al. v. SUN PRINTING & PUBLISHING ASS'N.

### (Circuit Court, S. D. New York.  May 7, 1898.)

1. ACTION FOR INFRINGEMENT OF COPYRIGHT—AVERMENT OF PROPRIETORSHIP.
    An averment that complainants were, prior to the time of securing copyright, proprietors of a certain book or periodical, is a sufficient averment of proprietorship of an article and engraving alleged to have been pirated therefrom.

2. SAME—EXHIBIT WITH BILL—COPYRIGHTED BOOK—ARTICLE PIRATED.
    Where complainants' copyrighted book and defendant's article complained of are filed with and referred to in, the bill, they need not be copied therein.

3. SAME—ENGRAVING OF EXTINCT ANIMAL—IMPROBABILITY OF ORIGINAL PRODUCTION.
    A bill will not be dismissed on demurrer where the cut or engraving pirated from complainants' copyrighted book is a close reproduction of complainants', even though it appears highly probable that the final proof will show that the engraving was not an original production of complainants.

This is a suit in equity by Benjamin Lillard and another against the Sun Printing & Publishing Association, seeking an injunction and accounting for alleged violation of complainants' copyrighted production.  It comes up on demurrer to the bill.

D. J. M. O'Collaghan, for complainants.
Franklin Bartlett, for defendant.

LACOMBE, Circuit Judge.  It is difficult to see why complainants have sought relief in equity for the alleged violation of their copyrighted production.  Assuming that the defendant still has in its possession some copies of its issue of Sunday, January 10, 1897, it is highly improbable that it will ever sell them.  Still more improbable is it that the woodcut, and the text descriptive thereof, will be reproduced in some future issue of the defendant's paper.  Injunction, therefore, should complainants make out a case entitling them to it, would be of no practical benefit.  Upon an accounting, assuming that accounting were decreed at the same time as the injunction, it would seem to be impossible for the complainants to show any damages resulting from the defendant's publication.  It is inconceivable that the sale of the Sunday Sun, with the illustration and description contained in it, interfered with or prevented the sale of a single copy of complainants' monthly publication.  So, too, it is difficult to see how complainants can show upon the accounting that any profit inured to the defendant by reason of the publication in question.  Reference was made upon the argument to the case of Callaghan v. Myers, 128 U. S.

617, 9 Sup. Ct. 177, but the facts in that case were very different from those in the one at bar. The defendant had printed a series of law reports,—the opinions of the court therein contained being, of course, free to the world,—and had pirated the syllabi from the reports of the complainant. Of course, the parts which were copied could not be separated from those not protected by the copyright without destroying the use and value of the whole; and therefore defendant, who had blended the lawful with the unlawful, was held to respond for all the profits received. The case here is very different. The illustration and the entire description which it is claimed that defendant has pirated might be eliminated from the paper without at all affecting what was left, and it will probably appear in the end that not a single additional copy of the paper was sold by reason of its containing the article and illustration complained of. Nevertheless, the suit is here, and must be disposed of under the recognized principles of equity jurisprudence and practice.

The first ground of demurrer is that the bill contains no averment that complainants are the authors, inventors, designers, or proprietors of the engraving, cut, or print, and of the article in reference to the same. It is, however, averred that they were, prior to the time of securing copyright, the proprietors of the book or periodical entitled "Popular Science, January, 1897." If they were proprietors of the whole book, they were, of course, proprietors of every part of it, including the engraving and the article in reference thereto contained in such book. Averment of proprietorship is sufficient, under the authorities. When the proofs are taken, complainants will no doubt have to show who was the author or designer of the article and of the illustration, and how such article and illustration came into their possession as proprietors, but it is not necessary in the bill to set forth the chain of title. Inasmuch as the complainants' copyrighted book and the defendant's article complained of have been filed with the bill, and are referred to in it, there was no necessity of rehearsing both *ipsissimis verbis* in the bill.

The article, while containing much which appears in complainants' article, is nevertheless within what is recognized as a fair use of the copyrighted description, especially in view of the fact that such description was presumably not original with the complainants, or with the individual from whom they obtained it. It is the description of an extinct animal, the "brontosaurus,"—an animal which no human being ever saw, and the details of whose anatomy have presumably been worked out by different geologists, and are now contained in many different publications, both here and abroad, of which it will probably appear that complainants' article is a mere compilation. The cut or engraving, however, is a close reproduction of complainants', and will hardly fall within the classification of a "fair use." The bill, therefore, should not be dismissed, as to the cut or engraving, upon demurrer, although it is highly probable that when the proofs are taken it will appear that the illustration of the brontosaurus was not an original production,

either of complainants, or of any one employed by them. The demurrer is sustained as to the article, and overruled as to the cut or engraving.